**Terri G. KNETSCH and Paul R. Knetsch, Individually and As Next Friends of Richard Knetsch, a Minor, Appellants,**

**v.**

**G.V. GAITONDE, M.D., Appellee.**

**No. 04–94–00510–CV.**

Court of Appeals of Texas, San Antonio.

March 31, 1995.

---

Charles A. Nicholson, Law Offices of Pat Maloney, P.C., San Antonio, for appellant.

Edward C. Mainz, Jr., Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, for appellee.

Before CHAPA, C.J., and
HARDBERGER and DUNCAN, JJ.

OPINION

HARDBERGER, Justice.

This is an appeal from a summary judgment rendered in favor of the doctor in a medical malpractice case. Because we feel that there are genuine issues of material fact, we reverse and remand for trial on the merits.

## Facts

Richard Knetsch, 12, was taken to Uvalde County Memorial Hospital on Feb. 2, 1992, because of abdominal pain. He was treated there by G.V. Gaitonde, M.D. Knetsch was released the next day with a diagnosis of constipation. Three days later he was back with complaints of nausea, vomiting and of a right testicle swollen to the size of a softball. Again Dr. Gaitonde was the treating physician and his diagnosis was orchitis, an inflammation of the testicle. On Feb. 11, 1992 the testicle had to be removed because testicle torsion (a different medical condition) had cut off the blood supply resulting in gangrene of the testicle. Knetsch's parents filed suit for a missed diagnosis resulting in the loss of the testicle. After discovery, Dr. Gaitonde moved for summary judgment. Knetsch's expert, Dr. Stanley Kogan, signed a controverting affidavit, but failed to attach either medical records or deposition testimony. Dr. Gaitonde attacked this affidavit by calling it "vague, non-specific, ambiguous, conclusory, ill-founded." However, no objection was lodged to the failure to attach supporting medical records or depositions before the trial court. These objections are raised for the first time on appeal. The trial court granted the summary judgment.

## Discussion

In his single point of error Knetsch says the trial court erred in granting defendant's motion for summary judgment because material facts raised issues about negligence and proximate cause. Dr. Gaitonde points to several instances where the plaintiff's expert contradicted his own testimony between his deposition testimony and his affidavit. Further Dr. Gaitonde points out admissions which he says negate proximate cause. This court agrees that the expert's testimony can be argued to be inconsistent, and that instances of conflict can be found between the affidavit and the expert's deposition. More certitude is expressed in the affidavit than under the press of cross-examination in the deposition, but this does not negate the testimony. It is impeachment material. The words in the affidavit do raise a fact issue. For instance:

> "If, in fact, the sworn testimony of the parents of Richard Knetsch is true and accurate and there was no testicular examination on February 2, 1992 or February 3, 1992, then Dr. Gaitonde was negligent and this negligence delayed the diagnosis for nine (9) days before proper medical treatment was provided . . .
>
> Such negligence was a proximate cause of the loss of the right testicle in this young patient . . .
>
> Since the most important clinical aspect of care in testicular torsion is *time,* the delay in diagnosis and treatment in this case, in all likelihood significantly affected the outcome . . .
>
> In summary, it is my opinion, with a great deal of medical certainty, that testicular torsion should have been the primary diagnosis entertained in this instance; that unreasonable delay occurred in both diagnosis and treatment; and that irreversible gangrene and loss of the testicle resulted from the delay."

Affidavit of Stanley J. Kogan, M.D.

 Dr. Gaitonde argues that Dr. Kogan's affidavit is defective because it does not specifically define negligence. In order to raise a fact issue the plaintiff's expert was required to specifically identify the standard of care applicable, demonstrate that he is familiar with that standard and explain why the defendant's treatment fell below the standard. *Connor v. Waltrip,* 791 S.W.2d 537, 541 (Tex.App.—Dallas 1990, no writ) (McClung, J., concurring); *White v. Wah,* 789 S.W.2d 312, 315–316 (Tex.App.—Houston [1st Dist.] 1990, no writ). Dr. Kogan sets forth the standard of care with the appropri-

ate specificity and explains how Dr. Gaitonde's care and treatment breached that standard. We know of no cases, and Dr. Gaitonde has failed to cite any, which hold that a physician's affidavit must recite the legal definition of negligence in order to be sufficient. While careful lawyers often include these definitions in their expert affidavits, it is not necessary in order to raise a fact issue.

■ The critical thing is whether the affidavit describes an act or omission that, if believed, would equate to the legal definition of negligence because it falls below that degree of care that a physician of ordinary prudence would use under the same or similar circumstances. The exact wording of a pattern jury charge instruction is not necessary in the affidavit, or trial testimony for that matter. In the case of an affidavit, the totality of the instrument must be examined, rather than any specific formalistic words. The excerpts from Dr. Kogan's affidavit, quoted above, and additionally the following language from the affidavit meet that test in our opinion. Dr. Kogan stated that:

"The standard of care, given the history and circumstances under which Richard Knetsch presented to Uvalde Memorial Hospital on February 2, 1992 required a thorough physical examination including a testicular examination. The Uvalde Memorial Hospital records indicate that on February 3, 1992, Dr. Gaitonde examined Richard Knetsch on two separate occasions. These records do not indicate that Dr. Gaitonde did a testicular examination on this date. The standard of medical care indicates that any boy of Richard Knetsch's age presenting with unexplained abdominal pain should have a complete abdominal, testicular and rectal examination. Even though Richard Knetsch's symptoms had improved on February 3, 1992, testicular conditions can have referred pain to the abdomen and since the cause of Richard Knetsch's abdominal pain had not been elicited, a testicular examination should have occurred before discharge on February 3, 1992."

■ The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in his favor. *Nixon,* 690 S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311.

Applying these guidelines, and if the affidavit is viable without the attachments of the medical records and depositions, we find that there is some evidence of issues of material facts that need to be decided by a jury. We now must examine the thornier issue of an unsupported, but unobjected to, controverting affidavit.

### Defective Affidavits and Objections

Tex.R.Civ.P. 166a(f) requires that certified or sworn copies of all records or papers referred to in a supporting or opposing affidavit "shall be attached thereto or served therewith." There is no question that the plaintiff's expert, in his affidavit, referred to both medical records and deposition testimony and did not attach them. Therefore, the affidavit is defective. However, no objection was made to the affidavit on this ground until the appeal of this case.

The last sentence of Rule 166a(f) provides that:

"Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."

Tex.R.Civ.P. 166a(f) (Vernon's Supp.1994).

The use of the word "reversal" is somewhat mysterious. Read literally it would mean that there is no penalty for not objecting to the lack of attachments as long as the party had won the summary judgment. This interpretation would almost always support

the movant for a summary judgment, and almost always be against the party resisting the summary judgment. This is true because appellate courts almost always only review cases where the summary judgment has been granted. This uneven burden of objecting goes contrary to traditional concepts of legal fairness where parties share the same burdens and endure the same penalties for transgressions. Dr. Gaitonde quite naturally takes the position that he is not seeking a reversal of the summary judgment, and therefore he did not have to make any objections at the trial level and can now raise for the first time the defectiveness of his opponent's controverting affidavit. The recent case of *Ceballos v. El Paso Health Care Systems*, 881 S.W.2d 439 (Tex.App.—El Paso 1994, writ denied), in a divided opinion (Larsen, J. dissenting), supports that viewpoint. This was also a medical malpractice case decided by a summary judgment. Plaintiff's experts were a doctor and a nurse, and they both signed controverting affidavits referring to unattached medical records. No objection was made by the movant to this shortcoming. The El Paso court pointed out that the "last sentence of Rule 166a(f) states unequivocally that it applies only to parties seeking reversal", *Id.* at 444, and therefore did not require that the defects be pointed out. This interpretation, however, destroys the rest of the sentence giving the opposing party an opportunity to amend. The dissent says the duty to object is on both parties, no matter who wins or loses the summary judgment:

> " . . . I believe that the rule is equally applicable to summary judgment movants urging us to affirm a judgment, as it is to parties seeking a reversal . . . I do not agree that omission of underlying documents upon which opinions are based is a defect which can be raised for the first time on appeal. Summary judgment should not rest solely upon plaintiff's failure to include the medical records in her response where defendant made no specific objection to the omission and plaintiff was

afforded no opportunity to remedy the defect."

*Ceballos*, 881 S.W.2d at 446.

 A tenet of basic preservation law is that if a party is going to preserve error there must first be an objection. We do not think though that our court in the instant case must decide whether Rule 166a meant to change basic preservation law. A close look at the last three sentences of Rule 166a(f) reveals the following. The first sentence says that documents referred to shall be attached with the affidavit. The second sentence says that affidavits can be supplemented or opposed by depositions or by further affidavits. The last sentence contains the language that "Defects in the form of affidavits or attachments" need not be objected to unless the party seeks reversal of the trial court's opinion. The attack on the plaintiff's expert is not based on a "defect in the form of affidavits or attachments." Rather it is a substantive attack on the principal affidavit itself that it does not raise a material issue of fact. The affidavit sentences are predicated that "if" there was no timely examination and "if" the parents are telling the truth and "if" certain symptoms were present then there would be negligence and a causal connection with the injury. All those "ifs" will have to be decided by the jury. It remains to be seen whether the plaintiff can do that, but we find that some material issues of fact have been raised even in the absence of attachments to the affidavit.

Reversed and remanded.

DUNCAN, Justice, concurring.

I agree that the summary judgment proof properly before the trial court raised a material issue of fact as to causation, and the case must be remanded. I write separately only because I disagree with the majority's discussion of the last sentence of Rule 166a(f), Tex.R.Civ.P.[1] In my view, there is nothing mysterious about the use of the word "reversal" in Rule 166a(f), and its proper interpretation is both straightforward and fair. Therefore, there is no basis to suggest or

---

1. "Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an oppos- ing party with opportunity, but refusal, to amend." Tex R.Civ P. 166a(f).

imply that Rule 166a(f) may not be applied in an appropriate case. This just isn't such a case.

Before the 1986 enactment of the Texas Rules of Appellate Procedure, there was no general rule for appellate preservation of error in the Texas Rules of Civil Procedure. Rather, to the extent preservation rules could be found in the rules, they were contextually located and frequently phrased in terms of "reversal." For instance, the charge preservation rules were and are found in the charge rules, and Rule 278 provides that the "[f]ailure to submit a question shall not be deemed a ground for *reversal* of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment...." TEX.R.CIV.P. 278 (emphasis added). That the last sentence of Rule 166a(f) speaks only in terms of "reversal" is not mysterious. Neither is it unfair in its operation.

If a party moves for summary judgment, and there is a defect in the form of his supporting affidavits or attachments, the burden is on the non-movant to specifically point out the defect by a proper objection at a time when the movant can amend or otherwise cure the defect. *See* TEX.R.CIV.P. 166a(f). If the non-movant properly objects, and the trial court erroneously overrules the objection, the non-movant may raise the incorrect ruling on the objection as a ground for reversing the summary judgment. *Id.* If the non-movant fails to object, he may not raise the defect in the form of the affidavits or attachments as a ground for reversal. *Id.* Indeed, the last sentence of Rule 166a(f) is simply a codification of the supreme court's holding in *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230, 234 (Tex.1962). Therefore, unlike the majority, I believe the last sentence of Rule 166a(f) fully comports with "traditional concepts of legal fairness" on appeal—the burden is on the party seeking reversal to bring forward a record demonstrating that she "presented to the trial court a timely request, objection or motion,

stating the specific grounds for the ruling he desires the court to make," as well as "a ruling upon the party's request, objection or motion." TEX.R.APP.P. 52(a); TEX.R.APP.P. 50(d); *see generally* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS §§ 6.09[1], 6.09[3] (Butterworth 1992) (written objection and ruling required to preserve complaint as to defect in form).

Rule 166a(f) thus expressly precludes reversal absent a timely objection. But that is not the situation here. Knetsch does not seek reversal on the ground of a formal defect in Dr. Gaitonde's summary judgment proof. Rather, he seeks a reversal because Dr. Kogan's affidavit raises a material issue of fact as to causation. It is Dr. Gaitonde who seeks an affirmance of the summary judgment on the ground that the defects in Dr. Kogan's affidavit and the missing attachments render the affidavit incompetent to raise a material issue of fact. It is undisputed, however, that Dr. Gaitonde did not object to Dr. Kogan's affidavit on any ground. The real issue before us, therefore, is whether Knetsch's failure to attach the documents upon which Dr. Kogan relies is a waivable formal defect or a non-waivable substantive defect.

In my view, the failure to attach the documents upon which an expert's affidavit relies is a purely formal and, therefore, waivable defect. *Cf. Youngstown,* 363 S.W.2d at 234 ("The deficiencies which [Youngstown] now urges appear to be purely formal, and it may be assumed that they would have been corrected upon proper exception in the trial court.") Accordingly, while I agree with the *Ceballos* [2] majority that the last sentence of Rule 166a(f) applies only in cases in which a reversal is sought because of a defect in the form of an affidavit or attachment, I do not agree that the failure to attach supporting documents is a non-waivable substantive defect. Likewise, while I disagree with the *Ceballos* dissent that the last sentence in Rule 166a(f) applies equally in cases in which the movant seeks affirmance, I agree that the defect is a waivable defect of form.

---

**2.** *Ceballos v. El Paso Health Care Sys.,* 881 S.W.2d 439 (Tex.App.—El Paso 1994, writ denied).

In short, Dr. Kogan's affidavit was properly before the trial court and, because it raises a material issue of fact, the judgment must be reversed and the case remanded.