Orlando **RODRIQUEZ**, Lydia **Rodriquez**, David A. **Ortega** and Rita **Ortega**, Appellants,

v.

**TEXAS FARMERS INSURANCE COMPANY**, Appellee.

No. 07–94–0356–CV.

Court of Appeals of Texas, Amarillo.

July 31, 1995.

Rehearing Overruled Aug. 30, 1995.

---

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

REYNOLDS, Chief Justice.

Texas Farmers Insurance Company secured declarations, via summary judgment, that it had no duty to defend Orlando Rodriquez and Lydia Rodriquez under its insurance policy issued to them, or to indemnify or pay on their behalf any sums they were obligated to pay David A. Ortega and Rita Ortega for claims resulting in a default judgment against the Rodriquezes. The Rodriquezes and the Ortegas contend, with five points of error, that questions of fact exist to vitiate the summary judgment. Based upon the rationale and authorities expressed, we will affirm the judgment.

The events underlying this appeal began on 5 May 1990, when the Rodriquezes' dog, Bozo, bit mailman David Ortega on the arm.[1] Complicated procedural maneuvering followed when, after unsuccessful settlement negotiations, attorney Mark Fitzgerald filed, on 4 May 1992, in the 47th District Court of Potter County, a lawsuit on behalf of the Ortegas, seeking to recover from the Rodriquezes for David's injuries and Rita's loss of consortium (the Potter suit). Reciting the Rodriquezes' failure to appear and answer despite having been "duly and legally cited to appear and answer," the court entered a 4 June 1992 default judgment against them, awarding David $1,500,000 and Rita $150,000, with both awards bearing pre- and post-judgment interest at 10% per annum.

The Rodriquezes had a homeowners policy of insurance with Farmers (the policy), designed to indemnify them up to $100,000 from liability for, among other things, injuries resulting from Bozo's penchant for biting. Previously, Farmers had indemnified the Rodriquezes pursuant to the policy provisions for several other incidents involving Bozo's proclivity to bite mailmen and others, and Farmers, through its adjustor Henry Honea, had conducted settlement negotia-

Burwell, Enos & Baron, P.C., Gregory B. Enos, Texas City, for appellants.

McCleskey, Harriger, Brazill & Graf, Jim Hund, Lubbock, for appellee.

---

1. The record is not clear concerning the severity of David Ortega's injuries. Initially, the Rodriquezes asserted he suffered a mere scratch; yet, later they conceded he was "seriously injured," and "Bozo had previously mauled another mailman ... and a 13 year old [and they] ... had been repeatedly cited for violating Amarillo's leash laws."

tions with Fitzgerald regarding the Ortegas' claims.

The policy provided that if a lawsuit, such as the Potter suit, was filed against the Rodriquezes, Farmers would provide an attorney to defend them against the claims, conditioned upon its receipt of proper notice of the lawsuit. However, in this instance, Farmers maintained that it did not receive proper notice of the Potter suit, and thus it failed to provide the Rodriquezes a defense before the default judgment was taken against them.

Upon learning of the default judgment, Farmers hired attorney Patrick Mosley to prepare an answer to the Potter suit, and a motion for new trial to have the default judgment set aside upon the assertion of defective service of citation on the Rodriquezes. Mosley filed an answer on 9 June 1992, but refused to file a motion for new trial, stating that it would not be in the Rodriquezes' best interest to do so.

Mosley believed this to be so because, on 18 June 1992, the Rodriquezes and the Ortegas executed an agreement, filed as part of the record in the Potter suit, whereby the Ortegas agreed not to execute the default judgment against the Rodriquezes in exchange for 90% of all sums owed to, and claims held by, the Rodriquezes pursuant to their policy of insurance with "Fire Insurance Exchange or any of the Farmers Insurance Group of Companies." Based upon this agreement, Mosley opined the Rodriquezes were protected from personal liability beyond the limits of the policy, and filing a motion for new trial would expose them to the possibility of personal liability if a new judgment were entered for an amount in excess of the policy limits.

At Farmers's request, Wyatt Brooks entered his appearance as attorney for the Rodriquezes and filed a motion for new trial, purportedly on their behalf, based upon assertions that the failure to answer was not a result of conscious indifference, but of acci-

dent or mistake, and that the Rodriquezes had a meritorious defense to the Ortegas' claims. Believing the motion for new trial to be a violation of their agreement with the Ortegas, the Rodriquezes furnished affidavits to the Ortegas' attorney stating that Brooks was not authorized to file the motion on their behalf.[2]

Attorney Greg Enos, after filing his appearance as "attorney in charge" on behalf of the Ortegas, moved to require Brooks to show by what authority he filed pleadings on behalf of the Rodriquezes. Resultantly, the motion for new trial, and all filings signed by Brooks, including the cost bond for an appeal, were stricken upon the trial court's determination that he had no authority to act on behalf of the Rodriquezes.[3]

The action from which this appeal arose was initiated by Farmers's petition for declaratory relief filed on 6 August 1992 in the 237th District Court of Lubbock County (the underlying suit). Naming the Rodriquezes and the Ortegas as defendants, Farmers asserted that the Rodriquezes failed to provide notice of the Ortegas' suit against them, and sought a declaration of the rights of the parties under the terms of the policy.

On 18 September 1992, the Rodriquezes and the Ortegas moved to have the venue of the underlying suit moved to Starr County. The motion was founded upon allegations that a prior suit between the same parties and involving the same issues was filed in Starr County on 10 July 1992 (the Starr suit), and the two should be consolidated. In support of the allegation, they attached a copy of an uncertified document entitled "Plaintiff's Second Amended Original Petition," whose style included a Starr County heading, but which bore no file-stamp by the clerk of the court, no original signature of an attorney, no date on the certificate of service, and no reference to the date of filing of the original petition.

---

2. The Ortegas filed a conditional remittitur, reciting that if the motion for new trial was denied, they would remit $100,000 of the award to Rita; however, no action was taken on this filing and no order of remittitur was entered.

3. An appeal, taken by Farmers, was dismissed when Farmers advised it did not wish to pursue the appeal. *Rodriguez (sic) v. Ortega,* No. 07–92–0258–CV (Tex.App.—Amarillo, Aug. 3, 1993, no writ) (not designated for publication).

Subject to their efforts to have the venue of the underlying suit moved to Starr County, the Rodriquezes and the Ortegas filed a counterclaim contending Henry Honea, an adjustor for Farmers, had negotiated with Fitzgerald and had notice of his intention to file suit if no settlement could be reached.[4] Alleging Honea had the opportunity to settle the claim for $25,000, but failed to do so, the Rodriquezes and the Ortegas sought damages for Farmers's negligence and gross negligence in failing to properly investigate, defend, and settle the claim against their insured as required by *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved), and *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656 (Tex.1987).

Additionally, the Rodriquezes and the Ortegas moved to either dismiss or abate the underlying suit pending the outcome of the Starr suit. They did not request a hearing of this motion upon its filing, and a hearing was not requested until five months later.

On 28 September 1992, the trial court ordered the underlying suit transferred to Starr County. However, on 25 February 1993, the parties agreed to the return of the suit to the Lubbock court, because the "cause was mistakenly transferred to Starr County since the requisite hearing and notice were not provided." *See* Tex.R.Civ.P. 87. Two hours before the filing of the agreement, the Rodriquezes and the Ortegas requested a hearing on their motion to dismiss or abate the underlying suit, but no setting was then made, and the underlying suit remained dormant until 30 June 1994.

Alleging the Rodriquezes were not legally obligated to pay the default judgment, Farmers filed its first amended original petition for declaratory relief. Attached as an exhibit to the petition was an agreement between the Rodriquezes and the Ortegas, by which they declared their prior agreement null and

void, and provided that the Rodriquezes assigned to the Ortegas 80% "of any claims and causes of action" they might have against Farmers or any of its affiliates. Farmers reasserted that the Rodriquezes failed to notify it of the Potter suit, and asserted that Farmers had no liability under the policy because the Rodriquezes were not properly served with citation of the Potter suit. Farmers concluded its duty to defend was not invoked, and that the Rodriquezes had failed to cooperate as required by the policy, which precluded coverage under the policy.

Farmers moved for summary judgment on the grounds that (1) the Rodriquezes were not properly served and, therefore, the default judgment was illegitimate; (2) the Rodriquezes failed to cooperate with their insurer and were in collusion with the Ortegas, by which they violated conditions of coverage; and (3) Farmers was under no duty to pay the default judgment. Farmers provided over 480 pages of documented summary judgment proof in support of its contention of entitlement to judgment as a matter of law.

In response, the Rodriquezes and the Ortegas represented there were questions of fact concerning whether (1) Farmers breached the insurance contract first, which in turn excused the Rodriquezes' cooperation; (2) the Rodriquezes in fact breached the cooperation clause; (3) the default judgment was void; (4) Farmers waived any policy defenses and was estopped from asserting them; and (5) the agreement between the Ortegas and the Rodriquezes precluded any duty by Farmers to pay the default judgment. Further, they pleaded that Farmers's motion ignored their counterclaim, and that venue was not proper in Lubbock because the underlying suit involved the same issues "now pending in Potter county."[5] As support, they offered the affidavits of attorneys John

---

4. The record reveals that Fitzgerald notified Honea he needed to file suit before the statute of limitations became a problem, but did not notify Honea when the suit had been filed; rather, he continued negotiations with Honea in pursuit of a settlement. Then, upon Honea's announcement of his vacation plans, Fitzgerald took the default judgment in Honea's absence.

5. There being nothing in the record before us of issues "now pending in Potter county" other than a spartan statement in the Rodriquezes' pleadings that the Starr suit was transferred to Potter County, and footnotes referring to a pending suit in "Potter county" as the Starr suit, we will continue to refer to the matter as the Starr suit.

Judge, Fitzgerald and Enos, and excerpts from the depositions of Honea and Mosley.

On 5 August 1994, the Rodriquezes and the Ortegas filed an amended motion to dismiss or abate the underlying suit. In support of their contention that the Starr suit was filed prior in time and involved the same parties and issues, they attached copies of documents entitled "Plaintiff's Fourth Amended Original Petition," and "Defendants' Motion to Transfer Venue and Original Answer," the styles of which included a Starr County heading, but neither of which bore a file-stamp by the clerk of the court or were certified to be copies of original documents.

On the same date, the Rodriquezes and the Ortegas also filed an amended motion to transfer venue and an answer subject to that motion, attaching the same "Plaintiff's Fourth Amended Original Petition" in support. They asked only for a hearing on the motion to dismiss or abate, and not on the motion to transfer venue.

Responding to the amended motion to dismiss or abate the underlying suit, Farmers replied that procedural defects and a lack of identical issues precluded the relief sought. Challenging Judge's and Fitzgerald's affidavits as competent summary judgment evidence, Farmers objected to the use of the affidavits as evidence to support the Rodriquezes' and the Ortegas' response.

By its 5 October 1994 judgment, the trial court denied the motion to dismiss or abate the underlying suit, sustained Farmers's objections to the affidavits, and decreed Farmers had no duty to defend the Potter suit prior to, and had no duty to pay, the default judgment, and that the Rodriquezes had no coverage under the policy for the Potter suit. On 6 January 1995, the court severed the Rodriquezes' and the Ortegas' counterclaim, making the 5 October 1994 judgment final and appealable, and mooting the Rodriquezes' and the Ortegas' appellate contention, offered by their post-submission letter brief, of a fact issue regarding the disposal of their *Stowers* counterclaim. *Hargrove v. Insurance Inv. Corporation,* 142 Tex. 111, 176 S.W.2d 744, 747 (1944).

By their perfected appeal, the Rodriquezes and the Ortegas contend the trial court erred in (1) denying their motion to dismiss or abate the underlying suit, (2) sustaining Farmers's objections to the Judge and Fitzgerald affidavits, (3) decreeing Farmers had no duty to defend the Rodriquezes prior to the default judgment (4) nor any duty to indemnify them from that judgment, and (5) decreeing that the Rodriquezes had no coverage under the policy. We will address the contentions of error in logical order.

Pursuant to rule 166a(c), Texas Rules of Civil Procedure, a summary judgment is proper only when a movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828–29 (Tex.1970). Once the movant has established a right to summary judgment, the non-movant assumes the burden to respond and present any issues which would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

When reviewing the granting of a motion for summary judgment, we do not view the evidence in the light most favorable to the judgment of the trial court; rather, we follow the standards mandated by the Supreme Court in this language:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985).

 Initially, the Rodriquezes and the Ortegas contend the trial court erred in not abating the underlying suit because the Starr suit was filed prior in time and involved the same parties and issues. In this regard, it is well settled that the court in which suit is

first filed acquires dominant jurisdiction to the exclusion of other coordinate courts, and abatement is only proper in deference to a suit which has dominant jurisdiction. *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974). By submitting the abatement issue in their response to Farmers's motion for summary judgment, the Rodriquezes and the Ortegas contended, and on appeal contend, that the predominance of the Starr suit created a question of fact. To raise the fact issue of such contention, it was incumbent upon them to present competent summary judgment evidence which would raise the fact of the predominance of the Starr suit. *Allen v. Western Alliance Insurance Co.,* 162 Tex. 572, 349 S.W.2d 590, 594 (Tex.1961).

Although the Rodriquezes and the Ortegas alleged the Starr suit was filed on 10 July 1992, prior to the 6 August 1992 filing of the underlying suit, their pleadings did not constitute summary judgment proof; they must have presented summary judgment proof to establish a fact issue. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 678. The only proof offered consisted of the uncertified copies of pleadings purportedly filed in the Starr suit; however, absent the certification of the copies required by rule 166a(f), *supra,* the copies were not, as they must be, in a form admissible at a conventional trial, *Gibralter Sav. Ass'n v. Martin,* 784 S.W.2d 555, 556 (Tex.App.—Amarillo 1990, writ denied), and showed nothing more than that they were drafted. As a result, the Rodriquezes and the Ortegas are in the position of offering no evidence to show the existence of the genuine issue of fact of the predominance of the Starr suit. *Town North Nat. Bank v. Broaddus,* 569 S.W.2d 489, 494 (Tex.1978).

We are not persuaded by the Rodriquezes' and the Ortegas' post-submission contention, in letter brief form, that Farmers's response to their motion to dismiss or abate conceded that another suit was pending in Potter County and, hence, amounted to a "judicial admission." Farmers's response did not concede that the Starr suit was prior in time to the underlying suit, nor that it involved the same issues and parties; in fact, Farmers contradicted the contention by its response. The first point of error is overruled.

By their second point, the Rodriquezes and the Ortegas complain of the trial court's sustainment of Farmers's objections to Judge's and Fitzgerald's affidavits and the exclusion of the affidavits from consideration as summary judgment evidence. Despite the heterogeneity of Farmers's objections to the trial court vis-a-vis its appellate arguments, we cannot fault the trial court for excluding the affidavits from consideration as summary judgment evidence.

To establish his qualifications as an expert, Judge averred that he was a licensed attorney, familiar with personal injury suits, including those involving attacks by domestic pets, and that he had reviewed a specified list of documents relative to the Lubbock, Starr and Potter suits. Judge then opined that Farmers negligently handled the settlement negotiations in the Potter suit; that Farmers breached the insurance contract in its failure to defend the Rodriquezes in the Potter suit; and that the Rodriquezes, "at all times cooperated with Farmers and did not breach the insurance contract."

Judge was not one of the attorneys involved in the Potter suit litigation, nor in the underlying suit; instead, his opinions were based upon his review of the documents listed in the exhibit to his affidavit. However, those records were not attached to the affidavit and several of them do not appear anywhere in the summary judgment evidence.

At the hearing on the motion for summary judgment, Farmers objected that Judge's opinions were "global and conclusory" and would be inadmissible at trial, and that the affidavit failed to recite a proper oath. Judge averred that he was personally acquainted with the facts stated in his affidavit, but because he did not state those facts were true, the trial court correctly excluded his affidavit from consideration. *Humphreys v. Caldwell,* 888 S.W.2d 469, 470–71 (Tex. 1994). However, Farmers's appellate objection to Judge's affidavit is that it is substantively defective because it fails to contain certified copies of the documents upon which he relied in formulating his opinions.

■ The Rodriquezes and the Ortegas are correct that Farmers's objections to the trial court as to the form of Judge's affidavit do not comport with its appellate complaint as to the substance of the affidavits. Nevertheless, when the appellate complaint relates to the substance of the affidavit, it is not necessary that the objection was pointed out to the trial court, because there is no requirement of an opportunity to amend upon such a complaint. *Bell v. Moores*, 832 S.W.2d 749, 756 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Failure to attach copies of the documents was a substantive defect which may be raised for the first time on appeal. *Ceballos v. El Paso Health Care Systems*, 881 S.W.2d 439, 444–45 (Tex.App.— El Paso 1994, writ denied).

Summary judgment procedural rules require that certified or sworn copies of all records or papers referred to in a supporting or opposing affidavit "shall be attached thereto or served therewith." Tex.R.Civ.P. 166a(f); *State v. Easley*, 404 S.W.2d 296, 297 (Tex.1966). Failure to attach copies of the documents relied upon in forming Judge's opinion was a fatal defect in the substance of the affidavit, and the trial court properly excluded it from consideration, *Ceballos v. El Paso Health Care Systems*, 881 S.W.2d at 444–45, because none of the documents was entitled to consideration in the summary judgment hearing. *State v. Easley*, 404 S.W.2d at 297. Without a consideration of the absent documents, there is no way to tell which portion of the documents Judge relied upon in expressing the substance of his opinions. *Ceballos v. El Paso Health Care Systems*, 881 S.W.2d at 445.[6]

Fitzgerald's affidavit, given upon his oath to a notary public, began with this language:

My name is MARK B. FITZGERALD and I am over the age of eighteen and am competent to make this affidavit. I have personal knowledge of the matter contained herein.

Fitzgerald averred that the Potter suit was an "adversary proceeding," as well as "a hard fought battle," and an "arms length" transaction, and "[t]here was absolutely no collusion between" the Rodriquezes and the Ortegas. Further, the company employed to effectuate service of citation on the Rodriquezes was "well respected," and he had not heard of "any complaints from other attorneys or the judiciary concerning" the company. Below the recitation of the events of service of citation upon the Rodriquezes in the Potter suit, the jurat read:

SUBSCRIBED AND SWORN TO BEFORE ME, by the said MARK B. FITZGERALD to which witness my hand an (sic) seal of office this 3rd day of August, 1994.

Immediately noticeable is that although Fitzgerald averred to his personal knowledge, he did not aver to the truth of the facts stated in the affidavit.

Farmers objected to the trial court that Fitzgerald's affidavit contained facts and matters which would be inadmissible in evidence upon a trial of the matter since it contained averments which were "global and conclusory." Farmers also objected to the form of the affidavit because it failed to set forth that Fitzgerald was competent to testify to the matters stated therein.

Farmers's appellate contention against Fitzgerald's affidavit is that it is substantively defective because the affiant did not aver that the statements made were true. If any of Farmers's appellate complaints as to the substance of the affidavits are meritorious, we will overrule the contention of error. *Bell v. Moores*, 832 S.W.2d at 756.

---

6. In a late, post-submission letter brief, the Rodriquezes and the Ortegas have furnished a copy of the recent opinion in *Knetsch v. Gaintonde*, 898 S.W.2d 386 (Tex.App.—San Antonio, 1995, n.w.h.), in which there is expressed the view that the failure to provide documents referred to in an affidavit is a matter of form, thereby disagreeing with the *Ceballos* court's holding that it is a matter of substance. Having considered the matter fully, we adhere to the *Ceballos* rationale and holding as applying to the situation where the documents are not in the record, particularly since the Supreme Court declined to disturb the holding, having held earlier in *Easley* that the failure to furnish the documents as required by Rule 166a(f), *supra*, results in the documents not being entitled to consideration in a summary judgment hearing.

Except as authorized by statute,[7] an affidavit is insufficient unless the allegations are direct and unequivocal and perjury can be assigned upon it. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Morgan v. Amarillo Nat. Bank*, 699 S.W.2d 930, 936 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). An affidavit which does not positively and unqualifiedly represent that the facts disclosed in the affidavit are true and within the affiant's personal knowledge is legally insufficient, and cannot serve as summary judgment evidence. *Humphreys v. Caldwell*, 888 S.W.2d at 470–71. Since Fitzgerald's affidavit did not contain an averment of the truth of the facts stated, the trial court did not err in excluding it from consideration. *Id.* The second point of error is overruled.

Not considering the Judge and Fitzgerald affidavits, the trial court determined that Farmers had no duty to defend the suit, and no duty to pay the resulting default judgment, and the Rodriquezes had no coverage under the policy for default judgment rendered in the Potter suit. By a collective argument presented under their final three points of error, the Rodriquezes and the Ortegas contend the trial court erred in these determinations. These contentions will be considered under the previously articulated standard for review of a summary judgment.

The court's determinations that Farmers had no duty to defend the Rodriquezes prior to the default judgment in the Potter suit, or to indemnify the Rodriquezes or pay on their behalf any sums they were obligated to pay the Ortegas, and that the Rodriquezes had no coverage under the policy, are respectively challenged with the consolidated third, fourth and fifth points of error. The determinations must, under summary judgment principles, have been premised upon the no duty grounds presented by Farmers, *viz.*: First, that the Rodriquezes were never properly served with citation in the underlying suit and, therefore, Farmers never assumed a duty to defend prior to the entry of the default judgment; and second, that the Rodriquezes failed and refused to cooperate with Farmers in contravention of the terms of the policy by (a) entering into the assignment of rights and covenant not to execute, (b) refusing to file a motion for new trial and refusing to cooperate with the attorney retained by Farmers in his attempt to file such a motion, and (c) acting in collusion with the Ortegas and their attorneys in executing affidavits used to strike the motion for new trial filed by the attorney retained by Farmers for the Rodriquezes. If any one of the grounds is meritorious, the summary judgment will be upheld. *Borg–Warner Acceptance Corp. v. C.I.T. Corp*, 679 S.W.2d 140, 142 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

Without dispute, the policy required that the Rodriquezes notify Farmers of any lawsuit filed against them before Farmers's duty to defend was invoked. In this regard, the Rodriquezes and the Ortegas conceded upon oral submission that Farmers's duty was "triggered" by proper notice, *i.e.*, that the insured was served *and* the insured forwarded the citation to the insurer. *See Members Mutual Insurance Company v. Cutaia*, 476 S.W.2d 278, 279 (Tex.1972); *Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 466–67 (Tex.App.—Dallas 1991, no writ).

One of the purposes of requiring this notice is to inform the insurer that the insured has been served with process and that the insurer is expected to defend the suit. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). Consistent with that purpose, Farmers posited that it had no duty to file an answer until the plaintiff strictly complied with the rules of civil procedure concerning proper service of citation. *See, e.g., Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990) (actual notice to defendant, without proper service of citation, was not sufficient to convey jurisdiction to support a default judgment).

---

7. The statutory references provided by the Rodriquezes and Ortegas in their "post-submission letter brief" concern affidavits regarding costs, necessary services, and business records, and are inapplicable. *See* Tex.Civ.Prac. & Rem.Code Ann. § 18.002 (Vernon Supp.1995) (requirements of affidavits concerning costs and necessary services); Tex.R.Civ.Evid. 902(10) (requirements of a business records affidavit).

Service of citation in the Potter suit was governed by the specification in Rule 106, Texas Rules of Civil Procedure, that "[u]nless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103...." Rule 103 authorizes (1) any sheriff or constable or other person authorized by law, or (2) any person authorized by law or by written order of the court who is not less than eighteen years of age to serve citation.

Farmers documented in the trial court that the returns of the citations were executed by Dennis Snyder, an employee of U S Legal Support in Amarillo. Snyder was neither a sheriff nor constable, and he served the citations as a person purportedly authorized by a written order of the trial court. However, the order was one entered on 8 May 1990 by the district judges of Potter County, authorizing "JEFF HOUCHIN, d/b/a U S LEGAL SUPPORT, and the U S LEGAL SUPPORT Offices in Austin, Dallas, Ft Worth, Houston, Lubbock, and San Antonio, or any duly authorized employee or agent thereof" to serve citations.

Farmers also documented that Snyder, employed by the U S Legal Support Office in Amarillo, was not a duly authorized employee or agent of any of the offices in the cities named in the order, and that the order does not authorize Snyder, or any other employee of the Amarillo division of U S Legal Support, to execute service of citation. Pointing out that there are no presumptions in favor of valid issuance, service, and return of citation, and it cannot be presumed otherwise, *Wilson v. Dunn*, 800 S.W.2d at 836; *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex.1985), Farmers represents that the blanket order will not support valid service of citation upon the Rodriquezes.

Other than reliance upon Fitzgerald's affidavit, which was properly excluded from consideration, and Mosley's deposition testimony that a prudent attorney would have answered the lawsuit despite any defects on the face of the citation, the Rodriquezes and the Ortegas offered *nothing* to controvert Farmers's prima facie showing of defective service. Indeed, Mosley, presented by the Rodriquezes

and the Ortegas as an expert regarding issuance of service of citation, conceded in his deposition that service of citation by Snyder would only be proper upon a written order of the trial court authorizing his service because he was not a constable, sheriff or deputy at the time the citations were served.

Still, the Rodriquezes and the Ortegas argue that to accept Farmers's reasoning would relay to insurers that they would have "no duty to defend your insured if he/she is served in a fashion that is not in 100% strict compliance with rules of service ... and may allow a default judgment against its insured." They conclude such would be "a preposterous, anti-consumer ruling" and would conflict with Mr. Mosley's testimony that he would have protected his client by filing an answer even if he knew the service was defective.

▉▉▉ Nevertheless, the want of certainty in a citation cannot be supplied by construction or intendment. *Smith v. Buckholts State Bank,* 193 S.W. 730, 731 (Tex.Civ. App.—Austin 1917, no writ). The manner of service must, in fact, strictly comply with the rules of civil procedure. And when the manner of service conflicts with the terms of the citation, it violates rule 106 and is invalid. *Smith v. Commercial Equipment Leasing Co.,* 678 S.W.2d 917, 918 (Tex.1984). To hold otherwise in this instance would be to gratuitously subject Farmers to liability before it received notice that the Rodriquezes were sued and were properly served or that they had accepted service and appeared in the suit. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d at 174.

▉▉▉ Given the invalidity of the service of citation upon the Rodriquezes, the trial court was without jurisdiction to render the default judgment against them. *Wilson v. Dunn,* 800 S.W.2d at 836. As a result, the default judgment was subject to being set aside upon a motion for new trial and, if the court failed to do so, the judgment was subject to reversal upon appeal because of the defective service even though the issue was not raised in the motion for new trial. *Id.* at 837.

The insurance policy provided that no action shall lie against Farmers unless, as a

condition precedent thereto, there shall be full compliance with the terms of the policy. One of those terms obligated the Rodriquezes, upon being served in the Ortegas' suit, to immediately forward the suit papers to Farmers, and to "cooperate with [Farmers] and, upon [Farmers's] request, assist in making settlement, in the conduct of suits ... and ... shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses."

Whether the Rodriquezes forwarded the Potter suit papers to Farmers was not established. However, it is undisputed that when Farmers learned of the default judgment, Farmers retained attorney Mosley and then attorney Brooks to file a motion for new trial on behalf of the Rodriquezes. Mosley considered the filing of a motion for new trial to be foreclosed by the Rodriquez–Ortega covenant not to execute and assignment agreement, but Brooks filed a motion for new trial and an appeal bond on behalf of the Rodriquezes. When he did so, the Rodriquezes, believing the motion for new trial would be a violation of their agreement with the Ortegas, furnished to the Ortegas' attorney their affidavits stating that Brooks was not authorized to file the motion on their behalf. On the strength of the affidavits, the Ortegas' attorney challenged Brooks's authority to act on behalf of the Rodriquezes. These actions caused the filings by Brooks to be stricken and the ensuing appeal to be forestalled.

■ Because of the provisions in the insurance policy granting Farmers the right to defend suits and requiring the Rodriquezes to cooperate with Farmers, the Rodriquezes could not make any agreement which would operate to impose liability upon Farmers or would deprive Farmers of the use of a valid defense. *McGuire v. Commercial Union Insurance Co. of N.Y.*, 431 S.W.2d 347, 352 (Tex.1968). It is undisputed that because of their agreement with the Ortegas, the Rodriquezes failed to cooperate with Farmers in its efforts to set aside the default judgment. Their failure to cooperate, in violation of their obligation under the insurance policy, resulted in prejudice to Farmers in the amount of 1.65 million dollars, which was more than 16 times the coverage under

Farmers's policy. *See Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 166 (Tex.1993). Thus, Farmers was prejudiced as a matter of law, and as a consequence, Farmers is not liable for the default judgment against the Rodriquezes. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d at 175.

Notwithstanding, the Rodriquezes and the Ortegas contend the trial court's determination there was no coverage under the policy for the Potter suit was erroneous. This is so, they submit, because the determination was based upon Farmers's allegations that the Rodriquezes failed to cooperate as required by the policy although Farmers had first breached the policy terms in failing to settle the claim prior to judgment. Once Farmers breached its duty to settle, they argue, they were excused from any obligation to cooperate.

Absent from the Rodriquezes' and the Ortegas' response to Farmers's motion for summary judgment was any evidence to support the bare allegation of Farmers's failure to settle the claim. They presented nothing to controvert Honea's deposition testimony, and Lydia Rodriquez's own deposition testimony and letter to Honea, that she adamantly opposed any settlement upon her belief that David Ortega was not bitten or injured. Nor did they present controverting evidence to Farmers's showing that the default judgment in all likelihood would have been set aside upon a motion for new trial, but that the Rodriquezes refused to allow the motion to be filed even after a written demand by Farmers and assurances that the failure to allow the filing could affect their coverage under the policy. The only offer of contravention to Farmers's allegation of collusion between the Rodriquezes and Ortegas were Judge's and Fitzgerald's affidavits which were properly excluded from consideration.

■ Moreover, once Farmers moved for summary judgment on the ground, and evidenced as a matter of law, that the Rodriquezes failed to cooperate with it and were in collusion with the Ortegas, the Rodriquezes and the Ortegas assumed the burden to negate the pleaded exception from insurance coverage. *Brooks v. Blue Ridge Ins. Co.*, 677 S.W.2d 646, 651 (Tex.App.—Amarillo 1984,

writ ref'd n.r.e.). Then, to avoid Farmers's entitlement to summary judgment on that ground, the Rodriquezes and the Ortegas were required to expressly present to the trial court any reason and summary judgment proof to establish a fact issue. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 678. However, they offered no evidence that could be considered, thereby failing to raise a fact issue concerning Farmers's first breach which would excuse the Rodriquezes' failure to cooperate.

■ Still, the Rodriquezes and the Ortegas next contend that Farmers waived its defense of non-coverage since it assumed the Rodriquezes' defense without adequately reserving its rights to obtain a non-waiver agreement. The failure of Farmers to reserve its rights, the Rodriquezes and the Ortegas argue, estops it from asserting non-coverage.

■ Estoppel requires a showing that the insured was prejudiced by the conduct of the insurer. *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 552 (Tex.App.— Dallas 1990, writ denied). To satisfy this requirement, the Rodriquezes and the Ortegas rely upon (1) an error in the reservation of rights letter, and (2) Mosley's negligence in the preparation of the agreement between the Rodriquezes and the Ortegas, and his advice to the Rodriquezes not to file a motion for new trial.

Aside from the fact that the letter was not presented by the Rodriquezes and Ortegas as summary judgment proof, they conceded on appeal that the letter was a "thoroughly written reservation of rights letter [which] would seem to cover all angles." Their only complaint is that the letter is "from the wrong insurance company," because the author of the letter stated it was written on behalf of "Fire Insurance Exchange." [8] This error is viewed by the Rodriquezes and the Ortegas as estopping Farmers from relying upon the letter as a reservation of its rights.

However, the Rodriquezes and Ortegas have failed to show either reliance or prejudice by the mistake in the letter. This obtains, because their cognizance of the relationship of Farmers and Fire Insurance Exchange is evinced by this statement in their agreement: "'Farmers Insurance' means Fire Insurance Exchange, Texas Farmers Insurance Company, any of the Farmers Insurance Group of Companies, their agents, employees and attorneys." Further, Mosley stated that he had seen the letter and conferred with J.E. Sauseda, the Rodriquezes' private counsel, concerning the letter, and that there was "never any question raised by either Mr. Sauseda or the Rodriguezes (sic) concerning this reservation of rights letter."

The Rodriquezes and the Ortegas have not supported their argument of negligence by Mosley, hired by Farmers to defend the Rodriquezes, in drafting the Rodriquez–Ortega covenant not to execute/assignment agreement, and in advising the Rodriquezes not to file a motion for new trial. They have not contradicted the record revelations that the offer of a covenant not to execute was made by Fitzgerald, not Mosley, and was communicated to Sauseda before Mosley was retained to represent the Rodriquezes. When Mosley presented the agreement to the Rodriquezes, they told Mosley they were going "to rely on what J.E. said," and they consulted with Sauseda in executing the agreement.

More important, however, is that the Rodriquezes have not pointed to any evidence evincing that they were prejudiced by Mosley's drafting the agreement or by his advising them not to file a motion for new trial. Rather, the evidence is that by execution of the agreement, the Rodriquezes themselves have been freed from liability on the default judgment. Then, if any prejudice flowed from Mosley's actions, the prejudice is only to the Ortegas, but that is immaterial to Farmers's obligation under its policy, which was "[t]o pay on behalf of the [Rodriquezes] all sums which the [Rodriquezes] shall become legally obligated to pay as damages." In this light, it becomes unnecessary to further address the question whether the Rodriquez–Ortega agreement constitutes a failure on the part of the Rodriquezes to cooperate with Farmers.

---

**8.** Farmers's summary judgment proof contained the letter, which is indeed a thorough reservation of rights, albeit it was stated to be written on behalf of Fire Insurance Exchange.

Finally, the Rodriquezes and the Ortegas contend the summary judgment is an improper collateral attack on the default judgment, because the summary judgment questions the service of citation in the Potter suit. They submit that since the default judgment is final, its recitations of proper service must be taken as true and may not be impeached by extrinsic evidence. *See Jordan v. Texas Pac. Coal & Oil Co.*, 152 S.W.2d 875, 879 (Tex.Civ.App.—Amarillo 1941, writ ref'd) (where judgments are collaterally assailed, their jurisdictional recitals are not open to attack but import absolute verity).

Farmers, which was not a party to the Potter suit, replies that it is not attempting by the underlying suit to void the default judgment in the Potter suit; instead, it seeks the determinations whether it was obligated to defend the Rodriquezes in the Potter suit prior to the default judgment, and whether it is obligated to pay any part of the judgment. The judgment in the Potter suit fixed the Rodriquezes' monetary liability to the Ortegas. It did not involve, nor adjudicate, the question of the coverage of Farmers's policy issued to the Rodriquezes. The questions of liability and coverage are separate and distinct, and the establishment of liability in the Potter suit did not bind Farmers on the question of coverage under its policy. It follows that the underlying suit was not a collateral attack on the judgment in the Potter suit, and that judgment does not preclude Farmers from litigating the question of coverage in the underlying suit. *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988). The third, fourth and fifth points of error are overruled.

Farmers advances a cross-point, conditioned upon a reversal and remand, concerning a fact issue of its entitlement to attorney's fees. The overruling of the Rodriquezes' and the Ortegas' contentions of error pretermits a discussion of the conditional cross-point. Tex.R.App.P. 90(a).

The summary judgment is affirmed.

QUINN, J., concurs.

QUINN, Justice, concurring.

I concur in the judgment reached by the majority and the supporting rationale save the suggestions that "valid service" of process conditions on insurer's duty to defend. My reasons for excepting the latter proposition follow.

First, the duty to defend is a creature of contract. Whether, and the extent to which, it exists depends upon the provisions of the insurance policy. *Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776, 786 (Tex.App.—Texarkana 1994, no writ); *Daca, Inc. v. Commonwealth Land Title Ins. Co.*, 822 S.W.2d 360, 364 (Tex.App.—Houston [1st Dist.] 1992, writ denied). That policy must expressly obligate the insurer to defend. *Id.* Furthermore, the act or injury giving rise to the suit for which a defense is sought must fall within the coverage provided by the policy. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982); 7C J. Appleman *Insurance Law and Practice*, § 4682, p. 22–23 (West 1979). To explain the latter, one may picture a scenario wherein a plaintiff intentionally alleges a wholly baseless claim in his petition. In doing so, he violates Rule 13 of the Texas Rules of Civil Procedure and, assuming justice is done, absolutely prevents himself from securing a valid judgment, that is, from lawfully assessing the insured with liability. Yet, this does not automatically free the insurer, for if the allegation falls within the umbrella of coverage it must defend. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d at 788; 7C J. Appleman *Insurance Law and Practice*, § 4682, p. 22–23. Thus, coverage, as opposed to the likelihood of liability, controls an insurer's duty to defend. *Id.;* 14 M. Rhodes, R. Anderson, G. Couch *Couch Cyclopedia of Insurance* § 51.228 (1982).

By conditioning the duty to defend upon effective service of process, it renders controlling procedural rules encompassing service. Furthermore, such rules were intended merely to regulate the *court's* power to adjudicate a dispute and validly assess *liability* via a binding judgment. They have nothing to do with the substantive issues underlying the suit and cause of action. They are utterly distinct from the questions of contract,

insurance coverage provided by the contract, and duties emanating from coverage and the contract. They are not made to control unless so established by the contract.

Next, in perusing the insurance contract at bar one finds a clause stating that "the Company [Texas Farmers Insurance Co.] shall defend *any* suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if *any* of the allegations of the suit are groundless, false or fraudulent...." (Emphasis added). The provision says nothing of defending against only "properly served" suits, but "*any* suit." (Emphasis added). Furthermore, and assuming that the provision "shall defend any suit" were vague, one must interpret it in a strict manner favoring the insured. *State Farm Fire and Casualty Company v. Reed*, 873 S.W.2d 698, 699 (Tex.1993). To clear the gray by limiting its scope to *properly served* actions contradicts this Supreme Court admonition. *State Farm Fire & Casualty Co. v. Reed*, 873 S.W.2d at 699 (expressly stating that "[i]f the policy is worded so that it can be given only one reasonable construction, it will be enforced as written ... if ... [it] is susceptible to more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction most favorable to the insured.").

In further perusing the policy, one also discovers a provision directing the insured to "immediately forward to the Company every demand, notice, *summons*, or *other process* received by him or his representative...." Admittedly, this and similarly worded provisions serve as conditions precedent to the insurer's obligation to defend. Unless fulfilled, no duty arises. However, it, like the clause discussed above, mandates the delivery of "*every* ... summons or other process" not just those "properly served." (Emphasis added). Moreover, if only "properly served" citation were to trigger the duty to defend then one can only wonder why "every" summons and process must be sent to the insured. In other words, conditioning the duty to defend upon *proper service* implicitly renders meaningless part of the insurance contract, thereby running afoul of this Court's own precedent. *Fort Worth Lloyds Ins. Co. v. Willham*, 406 S.W.2d 76, 79 (Tex.Civ. App.—Amarillo 1966, writ ref'd n.r.e.) (holding that courts may not needlessly reject any words or terms used in contracts or delete therefrom as surplusage any clause.).

Next, in addition to triggering the duty to defend, the imposition upon the insured to forward summons and process serves other purposes. It enables the insurer to control the litigation. *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 369 (Tex. 1978). That this was intended is buttressed by the further contractual duty imposed on the insured to cooperate with the insurer. Combined, the two restrain the insured from impermissibly interfering in the performance of the insurer's obligations.

Yet, if notice is required to trigger the duty to defend and the latter carries with it the correlative right to control, then until the duty to defend accrues the insurer has no right to control. The insured, therefore, must be deemed to have the privilege, if not right, to assume and effectuate his own defense until the defective citation is cured.[1] Thus, conditioning the insurer's duty on proper service not only limits the coverage afforded an insured but also diminishes the insurer's lawful opportunity to control the litigation. More importantly, should the insured actually take control of his defense during the gap period, an insurer would be hard-pressed to argue that he violated his duty to cooperate. Again, because the insurer had no duty to defend, it lacked the correlative right to control. Without either, it had no cognizable interest with which the insured could interfere.

Additionally, it cannot be sincerely disputed that motions to transfer venue or dismiss via special appearances are defensive tactics available to an insurer. They have potential to influence the course of the proceeding. So too does a motion to quash service have such potential. Experience and research discloses that questions of whether to quash citation are as much in the realm of interposing a

---

1. At the very least, the insured would most likely be compelled to secure his own counsel to determine whether process was effective and how to proceed if it is not.

defense as are decisions relating to transferring venue, dismissing for lack of personal jurisdiction, specially excepting, or abating. Yet, these defensive tactics should not be removed from the defensive arsenal available to the insurer by conditioning the duty to defend and right to counsel on proper service. It does so by merely denying the insurer the right to control during the period in which it has no duty to defend.

Next, forwarding summons also notifies the insurer that the insured has been sued and expects a timely defense. *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d at 369. That service may, unbeknownst to the insured, be defective, does not somehow diminish his desire to be defended. Nor does it affect the notice afforded the insurer. Indeed, the case relied upon by Farmers entailed situations where the insured did not deliver summons, citation or petition as he agreed to. *E.g. Harwell v. State Farm Mut. Auto Ins. Co.*, 896 S.W.2d 170 (Tex.1995); *Members Ins. Co. v. Branscum*, 803 S.W.2d 462 (Tex.App.—Dallas 1991, no writ). Thus, it was conceivable that the insurer had no notice of the suit. When no notice is afforded, the courts deem it appropriate to protect the insurer. Yet, at bar, that is not the case. At the very least a question of fact exists regarding whether Farmers had notice. And, if it had notice, every purpose espoused in *Weaver* and *Harwell* for delivering citation to the insurer was fulfilled. Thus, there would be no logical reason for Farmers to escape its duty simply because of a defect in the mode of service made upon its insured.

Finally, a passage in *Harwell v. State Farm Mut. Auto Ins. Co.*, 896 S.W.2d 170 (Tex.1995), states that "State Farm would have gratuitously subjected itself to liability if it appeared on the insured's behalf before it received notice Harwell was joined in the lawsuit and *properly served,* or that she had accepted service and appeared in the suit." *Id.* at 174 (emphasis added). Yet, I note that it is inapposite.

First, in *Harwell,* service was made on someone who was neither the insured, his legal representative, nor a party to the suit. *Id.* at 172–73. Here, service was made on the insured who was also a party to the underlying action. Second, in *Harwell,* neither the insured nor his legal representative sent a copy of the live petition to the insurer, as required by the policy. *Id.* at 172. Here, the insured timely sent the requisite documents; at the very least, a question of fact exists with regard to the issue.

Third, the *Harwell* court took care to distinguish its circumstances from those wherein the insurer had actual knowledge of the suit. *Id.* at 174 n. 3. As the Supreme Court apparently believes, it is the lack of such notice coupled with *prejudice* which causes the insurer to escape liability. *Liberty Mut. Ins. Co. v. Cruz,* 883 S.W.2d 164, 165–66 (Tex.1993). Though it may have known of the claim, the *Harwell* insurer was not notified of the suit. *Harwell v. State Farm Mut. Auto Ins. Co.*, 896 S.W.2d at 174 n. 3. Here, the insurer knew of the suit once citation was forwarded, by the insured, to its agent, as per the policy terms.

Fourth, and to the extent that *prejudice* underlies the reason for relieving an insurer of its responsibility, *Liberty Mut. Ins. Co. v. Cruz,* 883 S.W.2d at 165–66, *Harwell* involved instances of prejudice. Here, no one attempts to explain, much less prove as a matter of law, how *defective service* prejudiced the insurer given that it may have received a copy of the suit papers as per the insurance policy.

Fifth, *Harwell* cites *Weaver v. Hartford, supra,* as support for its reference to "proper service." Yet, *Weaver* says nothing of "proper" service. Indeed, both it and *Harwell,* unlike here, concerned the insured's failure to comply with the policy by sending any of the suit papers to the insurer. Because the insureds failed to comply there, the Supreme Court felt it appropriate, as it should have, to protect the insurer. Here, the insured complied with its obligation, or at the very least, a question of fact exists with regard to it.

In sum, *Harwell* did not address the issue here pertinent. It did not resolve the question of whether an insurer, because of a defect in the mode of service, should be relieved of providing a defense to its insured who has otherwise complied with the terms of the insurance policy. Nor does the brief,

unexplained quip provide basis for subjecting an insured, who is often *a layperson* unschooled in the law, with the additional unwritten duty to not only determine whether the technical legal rules of service were met but also to coerce effective service as a condition to his insurer's duty to defend.

The conduct which "triggers" the duty to defend is *sending* the suit papers to the insurer. *Members Ins. Co. v. Branscum,* 803 S.W.2d at 466–67. Whether the insured received them via *proper service* is irrelevant, as long as he received and sent them to his carrier. To make it relevant, constitutes an undue act of judicial interference with private contracts. "Courts cannot make new contracts between the parties...." *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965). Had the parties cared to condition the duty to defend upon valid service, it was their option, not ours, to do so.