**TEXON ENERGY CORPORATION, Appellant,**

v.

**The DOW CHEMICAL COMPANY, Appellee.**

**No. A14–86–00775–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 4, 1987.

Rehearing Denied July 9, 1987.

Harvey F. Cohen, Houston, for appellant.

Kim F. Tyson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from a judgment in favor of appellee, Dow Chemical Co. (Dow), for the recovery of appellant's pro-rata share of the expenses incurred in the drilling of a prospect well for oil and gas production. Issues before us concern: (1) sufficiency of the evidence; (2) admissibility of business records; (3) rulings on the affirmative defense of mutual mistake; and (4) calculation of prejudgment interest. We affirm.

In 1981, appellant, Texon Energy Corp. (Texon), owned a twenty-five percent working interest in certain oil, gas and mineral leases in Live Oak County, Texas. In August 1981, Texon assigned two-thirds of its working interest in those leases to Longhorn Oil and Gas Company (Longhorn). On November 24, 1981, five companies (Dow, Texon, Longhorn, MCOR and Coral) executed a letter agreement and an operating agreement for the drilling of a test well on the Live Oak County property. In addition to providing that Dow was to be the operator, the agreements set forth the seventy-six percent working interest ownership of the parties as follows: Dow—$6/24$, Texon—$1/24$, Longhorn—$2/24$, MCOR—$3/24$, and Coral—$12/24$. The agreements further provided that the cost of drilling the well would be borne by each of the parties in proportion to their working interest ownership. All of the parties, including Texon, signed an authorization for expenditure which estimated the total cost of the well to be $3,139,500. Although Dow was aware of a farmout agreement between Texon and Longhorn, that agreement was not made a part of the letter agreement and the operating agreement executed by the five parties. Some time after drilling commenced, Longhorn became insolvent and each of the remaining working interest owners was assessed their proportionate share of Longhorn's debt. Texon, relying upon its farmout agreement with Longhorn, refused to pay any amount, including its own share of the drilling costs, and this suit resulted.

Texon's defenses were mutual mistake and fraud. At the conclusion of the evidence, the trial court granted an instructed verdict against Texon on its claim of mutual mistake. Additionally, the jury failed to find that Dow fraudulently induced Texon to sign the agreements. Judgment was accordingly entered for Dow in the amount

of $141,463 plus prejudgment interest of $85,454.80.

In its first three points of error appellant challenges the sufficiency of the evidence to support the judgment. Appellant contends the only cause of action alleged in Dow's petition was a suit on a sworn account and its verified denial "destroyed the evidentiary effect of the sworn account and forced Dow to prove its case as a common law action on an account." Specifically, appellant alleges there was either no evidence or insufficient evidence that the goods and services were delivered to the test well, or that the charges for those goods and services were the usual, customary and reasonable charges for such goods and services. Therefore, Dow failed to prove all the elements of an account. However, in oral argument appellant conceded, and we agree, Dow's petition alleged a cause of action for breach of contract. Appellant's first three points of error are overruled.

█ In its fourth point of error appellant contends the trial court erred in admitting Dow's invoices to Texon because they were not properly proven as the business records of Dow. We do not agree.

Plaintiff's Exhibit No. 1 consisted of Dow's monthly invoices to Texon for its share of the drilling expenses from January through October 1982. Attached to each invoice was a detail of the total expenditures for the month and the dollar amount of Texon's share. The comptroller for Dow testified he was the custodian of the records, the records were kept in the regular course of the business, and it was in the regular course of Dow's business for people with personal knowledge of "the items contained in the records to transmit those items to the accounting department for recording." This sufficiently authenticated the records under Rule 803(6) of the Texas Rules of Evidence. Once the necessary predicate was laid, it became appellant's burden to show that there was some underlying reason why the records were inadmissible. Having failed to do so, appellant cannot now complain. Appellant's hearsay objection was properly overruled.

We further note that when Plaintiff's Exhibit No. 5, a summary of all charges contained in Plaintiff's Exhibit No. 1, was offered into evidence, appellant stated "no objection." Appellant's fourth point of error is overruled.

█ In its fifth and sixth points of error appellant contends the trial court erred in refusing to submit an issue, and in granting an instructed verdict against it, on the affirmative defense of mutual mistake. Appellant argues that since both Dow and Texon knew that Texon had "a carried interest until after payout" and that since Dow knew that Texon was looking to Longhorn to pay its (Texon's) share of expenses, this amounted to evidence of mutual mistake of "whether the signed agreements represented the true intention of Dow and Texon concerning payment of drilling costs." We do not agree.

There is absolutely no evidence in the record that it was the intention of the parties to include the terms of the farmout agreement between Texon and Longhorn as a part of the letter agreement and operating agreement executed by Dow, Texon, Longhorn, MCOR, and Coral.

Appellant, citing *Damstra v. Starr*, 585 S.W.2d 817 (Tex.Civ.App.—Texarkana 1979, no writ) and *Spellman v. American Universal Investment Company*, 687 S.W.2d 27 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.), further asserts it should be entitled to cancellation of the contract based upon unilateral mistake. Again, we do not agree.

█ While it is true that proof of unilateral mistake coupled with inequitable conduct of the other party to the contract might entitle one to relief, there is no evidence in the record before us to raise the issue asserted. The letter agreement and operating agreement, signed by Texon, clearly spell out the liabilities of the parties. There is no evidence of any misrepresentation by Dow. The fact that Texon looked to Longhorn to pay its share of the costs under its side agreement with Longhorn cannot affect Texon's liability under the letter agreement and operating agree-

ment. Appellant's fifth and sixth points of error are overruled.

■ In its seventh point of error appellant contends the court erred in the calculation of prejudgment interest by awarding compound interest rather than "twelve percent annual interest" as provided in the agreement. The operating agreement required each non-operator to pay its bills within fifteen days after receipt. The agreement further provided, "[i]f payment is not made within such time, *the unpaid balance shall bear interest monthly at the rate of twelve percent (12%) per annum.*" (emphasis added). Appellant argues the language "unpaid balance" means unpaid *principal* balance. We do not agree. The terms are clear and unambiguous. Appellant's construction would render the term "monthly" totally meaningless. Obviously, the word "monthly" was used to establish the periodic "rest" upon which compound interest could be calculated. *See City of Austin v. Foster*, 623 S.W.2d 672 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.). Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.