NO. 07-99-0090-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 7, 2001

_____

S & J INVESTMENTS,

Appellant

v.

AMERICAN STAR ENERGY AND MINERALS CORPORATION,

Appellee

_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 29,150; HON. WILLIAM D. SMITH, PRESIDING

_____

Before BOYD, C.J., QUINN and JOHNSON, JJ.

S & J Investments (S & J) appeals from a final judgment in favor of American Star Energy and Minerals Corporation (American). Through eleven issues and numerous sub-issues, S & J argues that the trial court erred in 1) granting American a partial summary judgment concerning joint interest billing, 2) granting an instructed verdict on the issues of fraud, willful misconduct, and gross negligence, and 3) entering judgment on the jury's answers concerning attorney's fees and pre-judgment interest. For reasons stated below, we reverse in part and affirm in part.

### Background

This case concerns an oil and gas lease known as the "Bearkiller" lease. S & J (owner of a non-operating working interest) is an original party to the lease while American succeeded to the position of operator in 1987. As part of its duties, American billed each non-operating working interest owner their proportionate share of the operating expenses. The operating agreement also permitted the operator to assess upon the working interest owners a specific overhead expense per producing well per month.

Under the operating agreement, S & J agreed to pay its proportionate share of the expenses within fifteen days from date of receipt. However, in August 1990, it ceased paying its share of same. This resulted in American filing suit. S & J joined issue and counterclaimed for breach of the operating agreement, negligence, gross negligence, breached duty of good faith and fair dealing, usury, and fraud. Thereafter, American filed a motion for partial summary judgment on various grounds. The trial court granted American a partial summary judgment upon the allegations of breached duty of good faith and usury. So too did it hold that S & J failed to comply with a provision of the operating agreement requiring working interest owners to contest charges in writing within a certain period of time. Lastly, it awarded American $34,241.32 as the amount of uncontested expenses due and payable from S & J. The remaining counterclaims of S & J were preserved for trial.

After presentation of evidence to a jury at trial, the trial court granted American's motion for directed verdict on the issues of fraud, willful misconduct and gross negligence. However, the question of whether a provision of the operating agreement allowed American to charge compound interest was submitted to the jury, as was the question

regarding the amount of attorney's fee to be awarded to American. The jury answered yes to the former and awarded American fees. Final judgment was then entered upon that verdict.

### *Partial Summary Judgment*

*Standard of Review*

The standard by which we review summary judgments is well-known and need not be repeated. Instead, we simply refer the parties to *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910 (Tex. 1997) and *Nixon v. Mr. Property Management Co. Inc.*, 690 S.W.2d 546 (Tex. 1985) (involving the standard generally applicable to summary judgments).

*Application of Standard*

*1. Good Faith and Fair Dealing*

S & J argued that the trial court erred in granting summary judgment upon its claim of breached duty of good faith and fair dealing. We disagree. Those party to an operating agreement do not owe each other duties of good faith and fair dealing. *Taylor v. GWR Operating Co.*, 820 S.W.2d 908, 909 (Tex. App.--Houston [1st Dist.] 1991, writ denied); *Texstar N. Am., Inc. v. Ladd Petroleum Corp.*, 809 S.W.2d 672, 677-78 (Tex. App.--Corpus Christi 1991, writ denied). Thus, the trial court did not err in holding, via summary judgment, that American owed no such duty to S & J , and we overrule the point.

*2. Waiver and Estoppel*

Next, S & J contended that American was prohibited from relying upon the provision in the contract requiring S & J to present its complaints regarding the bills in writing to American. The basis for the contention were the theories of waiver and estoppel. That is,

3

it argued that American either waived or was estopped from relying on the provision. We disagree and overrule the point.

As to the matter of waiver, that ground was not asserted below in response to American's motion for summary judgment. S & J simply mentioned estoppel, and estoppel is a legal theory distinct from waiver. *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 736 (Tex. App. – Corpus Christi 1994, writ denied). So, since waiver was not mentioned below, it cannot be used as a basis to secure reversal of the partial summary judgment on appeal. TEX. R. CIV. PROC. 166a(c).

As for estoppel, S & J simply mentions the theory in passing in its brief. Furthermore, neither citation to legal authority nor explanation of the theory's application to the dispute at bar accompanied S & J's allusion to the theory. Consequently, the issue was inadequately briefed and, therefore, waived. TEX. R. APP. PROC. 38.1(h) (stating that a brief must contain a clear and concise argument for the contentions made, with appropriate citation to authority and the record); *State Farm Lloyds, Inc. v. Williams*, 960 S.W.2d 781, 789 (Tex. App.--Dallas 1997, no writ) (holding that the failure to cite legal authority in support of an issue constitutes waiver of the issue).

*3.  Usury*

Next, S & J alleged that the trial court erred in granting it an unfavorable summary judgment upon its claim of usury. We disagree and overrule the point.

American allegedly committed usury because it charged interest in excess of 10% per annum. As to the matter of interest, the operating agreement provided,

> [e]ach Non-Operator shall pay its proportion of all bills within fifteen (15) days after receipt. If payment is not made within such time, the unpaid balance shall bear interest monthly at the rate of twelve percent per annum or the maximum contract rate permitted by the applicable usury laws in the state in which the Joint Property is located, whichever is the lesser . . . .

Since the maximum amount of interest a creditor could charge back in 1980 (when the operating agreement was executed) was allegedly ten percent, American could never charge more than ten percent, according to S & J. Furthermore, the case of *Reagan v. City Nat. Bank*, 714 S.W.2d 425 (Tex. App.--Eastland 1985, writ ref'd. n.r.e.) was cited as support for the contention. Admittedly, *Reagan* held that the usurious nature of a contract is to be determined at the time of the contract's inception. *Id.* at 428. Yet, unlike the situation at bar, *Reagan* did not involve a contract specifying alternate means of calculating the applicable interest rate. There, the parties selected a specific rate of interest, *i.e.* 19.5%. Here, however, the parties expressly agreed that the rate would be 12% per annum *or* the maximum rate allowed by law, which ever was lower. Additionally, and unlike the situation in *Reagan*, the agreement before us contemplated a succession of debts arising over the life of the operating agreement, not one represented by a promissory note as in *Reagan*. The same can be said of *Hockley County Seed and Delinting, Inc. v. Southwestern Inv. Co.*, 476 S.W.2d 38 (Tex. Civ. App.– Amarillo1971, writ ref'd. n.r.e.), another case cited by S & J. As in *Reagan*, and unlike the circumstances at bar, in *Hockley County* there existed only one indebtedness as opposed to a series created over time. Furthermore, nothing was said by the *Hockley County* court about the alternate means of calculating interest. So, given these distinctions in *Reagan* and *Hockley County*, it can hardly be said that either stands for the proposition urged by S & J. That is, neither

5

hold that when a series of debts are contemplated to arise over a period of time and the parties agree that interest shall accrue upon each distinct debt at either a specified rate or the maximum amount allowed by law, which ever is less, the rate applicable to the first debt incurred is the rate applicable to each subsequent debt.

Indeed, to adopt the proposition of S & J would be to run afoul of *Reagan* and *Hockley County*. This is so because both *Reagan* and *Hockley County* can be read as holding that usury is determined by testing the interest charged or levied against the maximum allowed by statute at the time the *debt was created*. And, to the extent that the debts upon which American sued at bar were created long after the operating agreement was executed, the maximum interest rate allowed by statute when they were created (as opposed to the time when the operating agreement was executed) would control, according to *Reagan* and *Hockley County*. Finally, since the maximum rate, *see* TEX. REV. CIV. STAT. ANN. 5069-1.04(b)(1) (Vernon 1987), repealed by Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (now found at TEX. FIN. CODE ANN. §303.305 (Vernon Supp. 2001)) (designating 18% as the maximum legal interest rate) exceeded the 12% charged by American, the latter did not engage in usury.

Nor can it be said that American committed usury when it effectively compounded the 12% per annum mentioned in the operating agreement by charging interest on a monthly basis. This is so because the parties agreed that interest was to be assessed on a monthly basis. And, since the parties so agreed, American was entitled to compound the interest due, according to *Texon Energy Corp. v. Dow Chemical Co.*, 733 S.W.2d 328, 331 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.). In *Texon*, the court was asked to

6

decide whether a contractual provision identical to that at bar permitted the compounding of interest on a monthly basis. The court held that it did. *Id.* at 331. So, given the holding in *Texon*, we conclude that the compound interest levied at bar was not usurious.

### 4.     *Award of Allegedly Uncontroverted Charges*

Next, S & J asserts that the trial court erred in entering an interlocutory summary judgment awarding American $34,241.31.[1] The latter, as urged by American in its motion for summary judgment, was allegedly composed of the uncontested lease operating expenses due by S & J. According to American, the sum was derived by deducting the expenses which S & J disputed from the entire amount of expenses American believed were due it.

In urging that the trial court erred in granting the summary judgment , S & J posited various contentions. Only one need be addressed here. It concerns the failure of American to attach to the affidavit of Carroll Beaman, president and sole-shareholder of American, documents to which he alluded in his affidavit and on which he relied in calculating the supposedly uncontested sum. Furthermore, these documents consisted of excerpts from the deposition of Richard Stowers, a principal of S & J, and joint interest billings. The former contain the "operating charges specifically identified [in the deposition of S & J's representative] . . . as being contested . . .," alleged Beaman. And, because they were not attached to the affidavit, the trial court was "unable to determine the basis for Beaman's conclusions," concluded S & J. We agree.

---

[1]This sum represented the damages awarded American in the final judgment as well, exclusive of interest and attorney's fees.

Rule 166a(f) of the Texas Rules of Civil Procedure requires, among other things, that an affiant attach to his affidavit "sworn or certified copies of all papers or parts thereof referred to in [the] affidavit . . . ." *Rodriquez v. Texas Farmers Ins. Co.*, 903 S.W.2d 499, 506 (Tex. App.--Amarillo 1995, writ denied). The failure to do so constitutes "a fatal defect in the substance of the affidavit . . . ." *Id.* This is so because, at the very least, without the documents the court or the opposing party may not be able to assess the accuracy of the facts or opinions offered by the affiant. And, that the defect was not made known to the trial court matters not for it may be raised on appeal for the first time. *Id.*

Here, the Stowers' deposition excerpts which Beaman mentioned in his affidavit formed the basis of his opinion regarding the uncontested charges allegedly due. Yet, neither the excerpts nor the deposition itself were attached to the motion.[2] *See E.B. Smith Co. v. U.S. Fidelity and Guar. Co.,* 850 S.W.2d 621, 624 (Tex. App. – Corpus Christi 1993, writ denied) (holding that the deposition or deposition excerpts must be provided to the trial court for consideration at time summary judgment motion is presented). Nor does the appellate record before us reveal that the deposition was ever filed of record. Similarly omitted from the affidavit were express references to where in the deposition these supposedly disputed charges appeared.[3] Under these circumstances, American failed to comply with Rule 166a(f) by omitting to attach a verified copy of the deposition excerpts

---

[2]Also omitted were verified copies of the "joint interest billings" which Beaman also referred to in his affidavit and which supposedly form the basis of its entire claim.

[3]Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proof. TEX. R. CIV. PROC. 166a(d). The appellate record also fails to disclose that American complied with this rule when it purported to use deposition excerpts to calculate the uncontested expenses allegedly due.

to its affidavit. Without them, "there [is] no way to determine which portion of the document[] the [interested witness] relied upon in expressing his opinion." *Natural Gas Clearinghouse v. Midgard Energy Co.*, 23 S.W.3d 372, 379 (Tex. App.--Amarillo 1999, pet. denied). Consequently, the affidavit is fatally defective, and the testimony regarding the undisputed sums allegedly due from S & J fails to establish, as a matter of law, that American was entitled to $32,241.31 from S & J.[4]

### *Directed Verdict*

*Fraud*

S & J alleged that American defrauded it because it charged S & J for expenses on wells which were not operating between 1990 and 1998. The trial court directed a verdict against S & J on the claim. S & J contended that this was error because there existed some evidence creating a question of fact upon each element of the claim. We disagree.

Assuming *arguendo* that the bills sent by American were false, S & J never paid them. Having failed to pay them, it can hardly be said that it suffered damage or injury. And, presence of damage or injury is elemental to a claim of fraud. *Eagle Properties .Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990).

Moreover, if presentation of those allegedly false bills constituted the supposed material misrepresentations, as S & J posited, then its failure to pay same also illustrates that it did not rely on the misrepresentations to its detriment. *See id.* (holding that reliance upon the misrepresentation is also an element of fraud). Simply put, it cannot be said that

---

[4]To the extent American suggests that Stowers confirmed at trial that the uncontested charges equaled the amount Beaman mentioned in his summary judgment affidavit, we find that this does not cure the defect. Whether summary judgment was properly issued depends upon the summary judgment evidence presented to the court at the time it was considering the summary judgment motion. *See State Farm Fire & Cas. Co. v. Griffin,* 888 S.W.2d 150, 153 (Tex. App. – Houston [1st Dist.] 1994, no writ).

9

one relied on a misrepresentation when he has not responded to or acted upon it. Consequently, the trial court did not err in granting American a directed verdict on the claim.

*Intentional Misconduct and Gross Negligence*

Next, S & J contends that the trial court erred in directing a verdict on its claims of intentional misconduct and gross negligence. Both theories were invoked by the complainant pursuant to a provision in the operating agreement insulating American from claims involving actions other than those considered intentional misconduct or grossly negligent. According to S & J, American engaged in such misconduct and negligence by failing to close or shut-in wells that were not operating and by charging investors expenses related to those very same wells.

In granting American an instructed verdict upon the allegations, the court recited several grounds for its decision. That is, it concluded that American was entitled to the verdict because S & J presented no evidence of gross negligence or of damage arising from the purported intentional misconduct and gross negligence. Given that the court's decision was based on several grounds, logic dictates that to secure reversal, S & J was obligated to attack each ground and illustrate why none were a legitimate basis for an instructed verdict. This it failed to do in its brief.

To the extent that S & J addressed damages, it did so merely in relationship to gross negligence. Nowhere under the points of error in question did it mention the damages it supposedly suffered as a result of American's supposed intentional misconduct. Moreover, in discussing the subject of damages *viz-a-viz* gross negligence, it said nothing about what, if anything, it suffered. Rather, mention was made of *American* "los[ing] $800,000 on the

10

lease" and that "investors" in general had lost or forfeited their interest in the field to American. Yet, nowhere did S & J argue or cite us to evidence illustrating that *it* was one of the investors which lost their interest. Nor did it mention that *it* lost any sum of money or that *its* property rights were somehow damaged.

Simply put, to survive a directed verdict, S & J had to present some evidence that *it* suffered injury because of American's conduct. Arguing that others may have is not enough. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984) (holding that one lacks standing to pursue redress for injury suffered by another). Consequently, we overrule the contention that the trial court erred in directing a verdict in favor of American upon the claims of intentional misconduct and gross negligence.

### *Jury Award of Interest*

Next, S & J contends that the jury's answer to question two of the charge was incorrect and against the great weight of the evidence. We disagree and overrule the point.

Through question two, the jury was asked to interpret the following provision of the operating agreement and to determine whether it allowed for the compounding of interest. The provision stated:

> Each Non-operator shall pay its proportion of all bills within fifteen (15) days after receipt. If payment is not made within such time, the unpaid balance shall bear interest monthly at the rate of twelve percent per annum or the maximum contract rate permitted by the applicable usury laws in the state in which the Joint Property is located, whichever is the lesser . . . .

11

The jury answered the question in the affirmative, and S & J attacks that determination.[5]

As discussed above, the provision permits the compounding of interest on a monthly basis. *Texon Energy Corp. v. Dow Chemical Co.*, 733 S.W.2d at 331. Given *Texon*, the jury's answer to the issue was not wrong.

***Attorney's Fees***

Lastly, S & J asserts that the award of attorneys fees must be reversed if we conclude that the trial court erred in granting summary judgment upon American's claim for payment of the $32,241.32 debt allegedly due it. We agree and sustain the contention.

The award of fees was dependant upon American succeeding upon its claim that S & J failed to pay its debt as agreed by contract. *See* TEX. CIV. PRAC. & REM CODE ANN. §38.001 *et. seq.* (Vernon Supp. 2001) (permitting the recovery of reasonable attorney's fees should the claimant prevail upon a claim of breached written or oral contract). Our having concluded that the trial court erred in entering summary judgment in favor of American upon its claim of debt, we hold that American could not be awarded attorney's fees at this time.

Accordingly, we reverse that portion of the final judgment and interlocutory summary judgment which awards American $32,241.32, pre and post judgment interest on that sum

---

[5]The meaning of an unambiguous contract is a question of law. *Texas Utilities Elec. Co. v. City of Waco,* 919 S.W.2d 436, 439 (Tex. App. – Waco 1995, writ denied). Thus, the duty to interpret same lies with the court, not a jury. Furthermore, the provision submitted to the jury for determination was, and is, not ambiguous. *Texon Energy Corp. v. Dow Chemical Co.*, 733 S.W.2d 328 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.) (holding a like provision to be clear and unambiguous). So, it should not have been tendered to the jury for construction.

and attorney's fees, affirm the judgment in all other respects, and remand the cause for further proceedings.

Brian Quinn
Justice

Do not publish.