NO. 07-06-0285-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



SEPTEMBER 28, 2007


______________________________



HARRIET LESIKAR, 



 Appellant


v.



EOG RESOURCES, INC., 



 Appellee

_________________________________



FROM THE 188TH DISTRICT COURT OF GREGG COUNTY;



NO. 2003-2305-A; HON. DAVID BRABHAM, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Before us is an appeal involving a written Rule 11 settlement agreement. After the
parties executed the document, the trial court attempted to enforce what it believed to be
its terms, but in doing so exceeded the scope of the accord, said Harriet Lesikar. EOG
Resources, Inc. disagreed. We reverse and remand the cause.

 Background

 The suit involved a mineral interest Lesikar inherited and her attempt to have EOG
acknowledge its extent. Also sought were damages reflecting the deficiencies in money
due her for gas taken under one or more leases encumbering the property. Upon joining
issue, the litigants executed the aforementioned Rule 11 agreement purporting to settle the
matter. It consisted of the following terms:

 1) EOG Resources, Inc. . . . will pay $22,500.00 in full and final settlement

 of any and all claims or allegations brought or which could have been
brought by your client, Harriet Lesikar regarding the leases made the basis
of her lawsuit;


 2) EOG will transfer to Harriet Lesikar an additional 0.0063819 working
interest and 0.00518475 net revenue interest on the Lee B Gas Unit;


 3) Harriet Lesikar will immediately file a Motion to Dismiss With Prejudice the
claims lawsuit filed against EOG; and


 4) both parties will execute the necessary documentation, such as stipulation
of interest, releases, etc., in order to finalize the dispute.


Though dated August 18, 2005, the letter agreement was file-marked by the trial court clerk
on September 16, 2005. Thereafter, cross motions for summary judgment were filed. 
Each litigant sought to enforce the agreement as written, but neither could agree upon its
scope. Lesikar thought it only settled claims that had matured at the time the document
became effective and that the possibility of having to recoup future, and as yet unmatured,
overcharges was omitted. EOG believed it resolved all claims of Lesikar, both those
existing and those to accrue in the future.

 Upon hearing the cross motions, the trial court granted that of EOG. Thus, it
ordered that 1) "EOG . . . pay into the Registry of the Court . . . $22,500 in full and final
settlement of any and all claims or allegations brought or which could have been brought
by . . . Lesikar regarding the leases . . .," 2) EOG . . . effect a transfer to . . . Lesikar . . . of
an additional 0.0063819 working interest and 0.00518475 net revenue interest on the Lee
B Gas Unit . . .," and 3) the conveyance become effective upon Lesikar's execution of "a.
[s]tipulation of interest; b. COPAS or other document indicating an agreed lease overhead
charge; and c. [o]ther necessary documents finalizing the parties' dispute." 

 Issues

 The scope of the Rule 11 agreement underlies the entire controversy before us. We
construe such agreements by attempting to garner the parties' intention through the words
used, the surrounding circumstances from which the agreement arose, the state of and
allegations in the pleadings, and the attitude of the parties with respect to the issues. 
Sitaram v. Aetna U.S. Healthcare of North Texas, Inc., 152 S.W.3d 817, 824 (Tex.
App.-Texarkana 2004, no pet.); Herschbach v. Corpus Christi, 883 S.W.2d 720, 734 (Tex.
App.-Corpus Christi 1994, writ denied). With this said, we turn to the agreement and
circumstances of record. 

 Per its terms, the $22,500 payment was to be made in full and final settlement of
"any and all claims or allegations brought or which could have been brought by your client
. . . regarding the leases made the basis of her lawsuit." The claims of Lesikar actually
brought were not only of effort to have EOG recognize the extent of her interest in the
property but also of effort to recoup "charges made . . . against the wells in question
appear[ing] to be unreasonable and improperly charged against the wells." So too did she
seek damages purportedly resulting from "overcharging for services." As can be seen,
these particular allegations refer to past, as opposed to future, charges against the wells.

 Moreover, we cannot ignore the obvious circumstance that the economic or
business relationship between Lesikar and EOG was to be ongoing, so long as the mineral
leases remained in existence. Not only was this circumstance existent when the
agreement was executed, but also it differs from situations wherein a settlement arises
from attempts to end a business relationship. The latter contemplates a sense of finality
between the parties to the accord. The former does not. And, given that the relationship
was to continue, our adopting EOG's interpretation of the Rule 11 document would
effectively preclude Lesikar from complaining about any omissions, errors or the like
committed by EOG down the road. In effect, EOG would have a license to act with
impunity viz the charges it makes against Lesikar's interest. 

 So too do we recognize that when obligations are ongoing (such as the duty to make
periodic payments of money), claims for their breach normally do not accrue until default
occurs. See Slusser v. Union Bankers Ins. Co., 72 S.W.3d 713, 717 (Tex. App.-Eastland
2002, no pet.) (stating that when a duty exists to make periodic payments, a separate
cause of action arises for each missed payment). And, without default, there is no claim.
This is of import when considered against the framework of the Rule 11 agreement at bar. 
Again, the $22,500 was payment to resolve "allegations brought or which could have been 

brought." (Emphasis added). Claims that have yet to accrue when the settlement was
reached because default had yet to occur could not have been brought in the lawsuit. 
Logic and rules of jurisdiction dictate that one cannot sue for damages arising from conduct
that has never occurred. And while parties can release unknown claims and damages that
arise in the future, Keck, Mahin & Cate v. National Fire Union Ins. Co., 20 S.W.3d 692, 698
(Tex. 2000), we hesitate to read such an expansive intent into a document lacking words
expressly indicative of such an intent and contemplating an ongoing business relationship.

 In short, that Lesikar was attempting to recover for overcharges that had been
assessed, that the business relationship between her and EOG was ongoing, and that
claims normally cannot be prosecuted until default occurs lead us to hold that EOG was
not insulated from suits regarding overcharges or misconduct occurring after the Rule 11
agreement at issue was executed. To the extent that the trial court held otherwise, it erred. 
So too did it err if by requiring Lesikar to sign a "COPAS or other document indicating an
agreed lease overhead charge," it sought to effectuate such a release. Yet, therein lies
another problem for neither the "COPAS or other document" mentioned are part of the
record before us. (1) Given that, we know nothing of their terms or effect. Nor do we know
whether their execution was "necessary . . . in order to finalize the dispute" given the
absence of evidence on the subject. Again, both EOG and Lesikar agreed to execute only
those documents deemed "necessary" to end the existing controversy. So, without
knowing the terms of the "COPAS or other document" and their impact on the dispute, we
can hardly say that EOG satisfied its summary judgment burden of proving, as a matter of
law, that their execution was necessary. Nor can we say that their execution was
unnecessary. Simply put, the issue remains an open question. 

 Accordingly, we reverse the final judgment of the trial court and remand the cause
for further proceedings.


. Brian Quinn 

 Chief Justice 
1. A COPAS does appear in the clerk's record, but it does not appear to be the document that EOG
is requesting Lesikar execute. A COPAS is also included in the appendix to EOG's brief. However,
documents attached to a brief which are not a part of the official appellate record may not be considered by
the court. Randle v. Wilson, 26 S.W.3d 513, 515 n.1 (Tex. App.-Amarillo 2000, no pet.).



cable to each subsequent debt. 

 Indeed, to adopt the proposition of S & J would be to run afoul of Reagan and
Hockley County. This is so because both Reagan and Hockley County can be read as
holding that usury is determined by testing the interest charged or levied against the
maximum allowed by statute at the time the debt was created. And, to the extent that the
debts upon which American sued at bar were created long after the operating agreement
was executed, the maximum interest rate allowed by statute when they were created (as
opposed to the time when the operating agreement was executed) would control,
according to Reagan and Hockley County. Finally, since the maximum rate, see Tex. Rev.
Civ. Stat. Ann. 5069-1.04(b)(1) (Vernon 1987), repealed by Act of May 24, 1997, 75th
Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3091, 3602 (now found at Tex. Fin.
Code Ann. §303.305 (Vernon Supp. 2001)) (designating 18% as the maximum legal
interest rate) exceeded the 12% charged by American, the latter did not engage in usury. 

 Nor can it be said that American committed usury when it effectively compounded
the 12% per annum mentioned in the operating agreement by charging interest on a
monthly basis. This is so because the parties agreed that interest was to be assessed on
a monthly basis. And, since the parties so agreed, American was entitled to compound the
interest due, according to Texon Energy Corp. v. Dow Chemical Co., 733 S.W.2d 328, 331
(Tex. App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.). In Texon, the court was asked to
decide whether a contractual provision identical to that at bar permitted the compounding
of interest on a monthly basis. The court held that it did. Id. at 331. So, given the holding
in Texon, we conclude that the compound interest levied at bar was not usurious. 

 4. Award of Allegedly Uncontroverted Charges

 Next, S & J asserts that the trial court erred in entering an interlocutory summary
judgment awarding American $34,241.31. (1) The latter, as urged by American in its motion
for summary judgment, was allegedly composed of the uncontested lease operating
expenses due by S & J. According to American, the sum was derived by deducting the
expenses which S & J disputed from the entire amount of expenses American believed
were due it. 

 In urging that the trial court erred in granting the summary judgment , S & J posited
various contentions. Only one need be addressed here. It concerns the failure of
American to attach to the affidavit of Carroll Beaman, president and sole-shareholder of
American, documents to which he alluded in his affidavit and on which he relied in
calculating the supposedly uncontested sum. Furthermore, these documents consisted
of excerpts from the deposition of Richard Stowers, a principal of S & J, and joint interest
billings. The former contain the "operating charges specifically identified [in the deposition
of S & J's representative] . . . as being contested . . .," alleged Beaman. And, because
they were not attached to the affidavit, the trial court was "unable to determine the basis
for Beaman's conclusions," concluded S & J. We agree.

 Rule 166a(f) of the Texas Rules of Civil Procedure requires, among other things,
that an affiant attach to his affidavit "sworn or certified copies of all papers or parts thereof
referred to in [the] affidavit . . . ." Rodriquez v. Texas Farmers Ins. Co., 903 S.W.2d 499,
506 (Tex. App.--Amarillo 1995, writ denied). The failure to do so constitutes "a fatal defect
in the substance of the affidavit . . . ." Id. This is so because, at the very least, without the
documents the court or the opposing party may not be able to assess the accuracy of the
facts or opinions offered by the affiant. And, that the defect was not made known to the
trial court matters not for it may be raised on appeal for the first time. Id. 

 Here, the Stowers' deposition excerpts which Beaman mentioned in his affidavit
formed the basis of his opinion regarding the uncontested charges allegedly due. Yet,
neither the excerpts nor the deposition itself were attached to the motion. (2) See E.B. Smith
Co. v. U.S. Fidelity and Guar. Co., 850 S.W.2d 621, 624 (Tex. App. - Corpus Christi 1993,
writ denied) (holding that the deposition or deposition excerpts must be provided to the trial
court for consideration at time summary judgment motion is presented). Nor does the
appellate record before us reveal that the deposition was ever filed of record. Similarly
omitted from the affidavit were express references to where in the deposition these
supposedly disputed charges appeared. (3) Under these circumstances, American failed to
comply with Rule 166a(f) by omitting to attach a verified copy of the deposition excerpts
to its affidavit. Without them, "there [is] no way to determine which portion of the
document[] the [interested witness] relied upon in expressing his opinion." Natural Gas
Clearinghouse v. Midgard Energy Co., 23 S.W.3d 372, 379 (Tex. App.--Amarillo 1999, pet.
denied). Consequently, the affidavit is fatally defective, and the testimony regarding the
undisputed sums allegedly due from S & J fails to establish, as a matter of law, that
American was entitled to $32,241.31 from S & J. (4)

Directed Verdict


 Fraud

 S & J alleged that American defrauded it because it charged S & J for expenses on
wells which were not operating between 1990 and 1998. The trial court directed a verdict
against S & J on the claim. S & J contended that this was error because there existed
some evidence creating a question of fact upon each element of the claim. We disagree.

 Assuming arguendo that the bills sent by American were false, S & J never paid
them. Having failed to pay them, it can hardly be said that it suffered damage or injury. 
And, presence of damage or injury is elemental to a claim of fraud. Eagle Properties .Ltd.
v. Scharbauer, 807 S.W.2d 714, 723 (Tex. 1990). 

 Moreover, if presentation of those allegedly false bills constituted the supposed
material misrepresentations, as S & J posited, then its failure to pay same also illustrates
that it did not rely on the misrepresentations to its detriment. See id. (holding that reliance
upon the misrepresentation is also an element of fraud). Simply put, it cannot be said that
one relied on a misrepresentation when he has not responded to or acted upon it.
Consequently, the trial court did not err in granting American a directed verdict on the
claim.

 Intentional Misconduct and Gross Negligence

 Next, S & J contends that the trial court erred in directing a verdict on its claims of
intentional misconduct and gross negligence. Both theories were invoked by the
complainant pursuant to a provision in the operating agreement insulating American from
claims involving actions other than those considered intentional misconduct or grossly
negligent. According to S & J, American engaged in such misconduct and negligence by
failing to close or shut-in wells that were not operating and by charging investors expenses
related to those very same wells. 

 In granting American an instructed verdict upon the allegations, the court recited
several grounds for its decision. That is, it concluded that American was entitled to the
verdict because S & J presented no evidence of gross negligence or of damage arising
from the purported intentional misconduct and gross negligence. Given that the court's
decision was based on several grounds, logic dictates that to secure reversal, S & J was
obligated to attack each ground and illustrate why none were a legitimate basis for an
instructed verdict. This it failed to do in its brief.

 To the extent that S & J addressed damages, it did so merely in relationship to gross
negligence. Nowhere under the points of error in question did it mention the damages it
supposedly suffered as a result of American's supposed intentional misconduct. Moreover,
in discussing the subject of damages viz-a-viz gross negligence, it said nothing about what,
if anything, it suffered. Rather, mention was made of American "los[ing] $800,000 on the
lease" and that "investors" in general had lost or forfeited their interest in the field to
American. Yet, nowhere did S & J argue or cite us to evidence illustrating that it was one
of the investors which lost their interest. Nor did it mention that it lost any sum of money
or that its property rights were somehow damaged. 

 Simply put, to survive a directed verdict, S & J had to present some evidence that
it suffered injury because of American's conduct. Arguing that others may have is not
enough. Hunt v. Bass, 664 S.W.2d 323, 324 (Tex. 1984) (holding that one lacks standing
to pursue redress for injury suffered by another). Consequently, we overrule the contention
that the trial court erred in directing a verdict in favor of American upon the claims of
intentional misconduct and gross negligence. 

Jury Award of Interest


 Next, S & J contends that the jury's answer to question two of the charge was
incorrect and against the great weight of the evidence. We disagree and overrule the
point.

 Through question two, the jury was asked to interpret the following provision of the
operating agreement and to determine whether it allowed for the compounding of interest. 
The provision stated:

 Each Non-operator shall pay its proportion of all bills within fifteen (15) days
after receipt. If payment is not made within such time, the unpaid balance
shall bear interest monthly at the rate of twelve percent per annum or the
maximum contract rate permitted by the applicable usury laws in the state in
which the Joint Property is located, whichever is the lesser . . . .


The jury answered the question in the affirmative, and S & J attacks that determination. (5) 
 As discussed above, the provision permits the compounding of interest on a monthly
basis. Texon Energy Corp. v. Dow Chemical Co., 733 S.W.2d at 331. Given Texon, the
jury's answer to the issue was not wrong. 

Attorney's Fees


 Lastly, S & J asserts that the award of attorneys fees must be reversed if we
conclude that the trial court erred in granting summary judgment upon American's claim
for payment of the $32,241.32 debt allegedly due it. We agree and sustain the contention. 

 The award of fees was dependant upon American succeeding upon its claim that
S & J failed to pay its debt as agreed by contract. See Tex. Civ. Prac. & Rem Code Ann.
§38.001 et. seq. (Vernon Supp. 2001) (permitting the recovery of reasonable attorney's
fees should the claimant prevail upon a claim of breached written or oral contract). Our
having concluded that the trial court erred in entering summary judgment in favor of
American upon its claim of debt, we hold that American could not be awarded attorney's
fees at this time.

 Accordingly, we reverse that portion of the final judgment and interlocutory summary
judgment which awards American $32,241.32, pre and post judgment interest on that sum 

and attorney's fees, affirm the judgment in all other respects, and remand the cause for
further proceedings.


 Brian Quinn

 Justice


Do not publish.
1. This sum represented the damages awarded American in the final judgment as well, exclusive of
interest and attorney's fees.
2. Also omitted were verified copies of the "joint interest billings" which Beaman also referred to in his
affidavit and which supposedly form the basis of its entire claim.
3. Discovery products not on file with the clerk may be used as summary judgment evidence if copies
of the material, appendices containing the evidence, or a notice containing specific references to the discovery
or specific references to other instruments are filed and served on all parties together with a statement of
intent to use the specified discovery as summary judgment proof. Tex. R. Civ. Proc. 166a(d). The appellate
record also fails to disclose that American complied with this rule when it purported to use deposition excerpts
to calculate the uncontested expenses allegedly due.
4. To the extent American suggests that Stowers confirmed at trial that the uncontested charges
equaled the amount Beaman mentioned in his summary judgment affidavit, we find that this does not cure
the defect. Whether summary judgment was properly issued depends upon the summary judgment evidence
presented to the court at the time it was considering the summary judgment motion. See State Farm Fire &
Cas. Co. v. Griffin, 888 S.W.2d 150, 153 (Tex. App. - Houston [1st Dist.] 1994, no writ).
5. The meaning of an unambiguous contract is a question of law. Texas Utilities Elec. Co. v. City of
Waco, 919 S.W.2d 436, 439 (Tex. App. - Waco 1995, writ denied). Thus, the duty to interpret same lies with
the court, not a jury. Furthermore, the provision submitted to the jury for determination was, and is, not
ambiguous. Texon Energy Corp. v. Dow Chemical Co., 733 S.W.2d 328 (Tex. App.--Houston [14th Dist.]
1987, writ ref'd n.r.e.) (holding a like provision to be clear and unambiguous). So, it should not have been
tendered to the jury for construction.